# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH R. HENRY,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW CATE, et al.,<br><br>    Defendants. | Case No. 1:14-cv-00791-LJO-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(Docs. 33, 34)**<br><br>**FOURTEEN DAY DEADLINE** |

## INTRODUCTION

Plaintiff Kenneth Henry, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 23, 2014. Plaintiff is proceeding on his claim for damages against Defendants Jolly, Contreras, and Ortega for use of excessive force, at California Correctional Institutional in Tehachapi ("CCI").

On September 1, 2015, Defendants Contreras and Jolly filed a motion for summary judgment (Doc. 33) and Defendant Ortega joined in the motion filed by Defendants Contreras and Jolly (Doc. 35) and filed a separate motion for summary judgment (Doc. 34).[1] The motions assert that Plaintiff failed to exhaust the available administrative remedies in compliance with 42 U.S.C. § 1997e(a) prior to filing this action.[2] Fed. R. Civ. P.[3] 56(c); *Albino v. Baca*, 747 F.3d 1162, 1166

---

[1] Defendant Ortega's motion focuses "only upon a few additional facts and arguments" that he feels are necessary on Plaintiff's claim against him. (Doc. 34-1, 1:24-28.)
[2] Both motions are addressed in this order since Plaintiff's claims against Defendants Contreras and Ortega are based on the same set of factual allegations.
[3] The Federal Rules of Civil Procedure will be referred to as "Rule *."

1

(9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014). Plaintiff filed his opposition.[4] (Doc. 48.) Defendants filed their replies. (Docs. 49, 50.)[5] The motions are deemed submitted. L.R. 230(*l*).

For the reasons discussed below, the Court finds that Plaintiff did not exhaust available administrative remedies prior to filing suit on his claims in this action. Thus, Defendants' motions for summary judgment should be **GRANTED** and this action should be **DISMISSED without prejudice**.

## DISCUSSION

**A.  Legal Standards**

    **1.  Statutory Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532; 122 S.Ct. 983 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use"

---

[4] Plaintiff filed one opposition which addressed both motions for summary judgment and asserted the same arguments in opposition to Defendants' motions. Thus, his opposition is discussed following a discussion of all movants' burdens rather than repeating the discussions and analysis. Defendants provided Plaintiff with contemporaneous notice of the requirements for opposing a summary judgment motion. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). Plaintiff nonetheless failed to support his opposition with a declaration or affidavit as to the truth of his assertions. (*See* Doc. 48.)

[5] All references to pages of specific documents pertain to those set forth on the upper-right corners as a result of the CM/ECF electronic court docketing system.

1  to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth,* 532 U.S. at
2  738.  However, "a prisoner need not press on to exhaust further levels of review once he has [ ]
3  received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

### 2. Summary Judgment Standard

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[6]  *Jones*, 549 U.S. at 216; *Albino,* 747 F.3d at 1166.

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172).  If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Plaintiff's filings must be liberally construed because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).  All inferences must be drawn in the light most favorable to Plaintiff as the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

A defendant is only entitled summary judgment if the undisputed evidence viewed in the light most favorable to the prisoner shows that administrative remedies were available to Plaintiff which he failed to exhaust. *Williams*, at 1166.  The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

/ / /

---

[6] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule *."  Any reference to other statutory authorities shall so indicate.

### 3. Summary of CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners welfare, Cal. Code Regs., tit. 15, § 3084, *et seq.* Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, a CDCR inmate initiates the grievance process by submitting a Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a). An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or related set of issues, per IA in the space provided on the first page of the IA form and one attached page (which must be on the prescribed Attachment form "602-A") in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2), & (4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents must be submitted with the IA; if they are not available, copies may be submitted with an explanation as to why the originals are not available and are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level within thirty days, and thereafter to the third-level. Tit. 15 §§ 3084.2, & 3084.7. First and second-level appeals must be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States Postal Service. Tit. 15 § 3084.2(d).

The Court must determine if Plaintiff filed any IAs concerning his claims, and if so, whether Plaintiff complied with CDCR's process; if Plaintiff did not comply, whether it was because the process had been rendered unavailable. *Ross*, 136 S. Ct. at 1859; *Sapp*, 623 F.3d at

823.

**B.     Defendant Jolly Met the Burden on Moving for Summary Judgment**

In the Complaint, Plaintiff alleges that on June 21, 2013, Defendant Jolley kept staring at him during an escort to the medical clinic.  After they arrived at the clinic and Plaintiff was seated in a chair, he asked Defendant Jolley if there was a problem.  Defendant Jolley pulled Plaintiff up from his chair, escorted him to the medical clinic podium, and "violently bashed" his head into the podium, causing him to need codeine for ten days for pain management.  (Doc. 1, Comp., p. 6.)

Defendant Jolly asserts that, though Plaintiff filed eight IAs from June 21, 2013, through May 23, 2014, only two mention Defendant Jolly:  CCI-0-13-01628 and CCI-0-13-02004.  (Doc. 33, pp. 2-3.)

The evidence reveals that Plaintiff submitted CCI-0-13-01628 on July 26, 2013, contending that Defendant Jolly hit his head against a medical security podium window on June 21, 2013, and that on July 26, 2013, Defendant Jolley harassed Plaintiff while he was in his cell.  (Doc. 33-1, 2:19-26, citing Doc. 33-5, SSUF No. 8.)  On September 17, 2013, the second level of review partially granted this IA via an inquiry which determined that staff did not violate CDCR policy.  (*Id.*, citing Doc. 33-5, SSUF No. 9.)  Plaintiff did not seek third level review of this IA.  (*Id.*, citing Doc. 33-5, SSUF No. 10.)

Plaintiff submitted CCI-0-13-02004 on October 3, 2013, in which he complained that Officer Jolley hit Plaintiff's head against a medical security podium window.  (Doc. 33-1, p. 3, citing Doc. 33-5, SSUF No. 17.)  The second level of review cancelled this IA on October 4, 2013, because it was a duplicate of Plaintiff's claims from CCI-0-13-01628.  (*Id.*, citing Doc. 33-5, SSUF No. 18.)

Plaintiff did not submit any other IAs concerning Defendant Jolley from June 21, 2013, through May 23, 2014.  (Doc. 33-1, 3:24-26, citing Doc. 33-5, SSUF No. 20.)  The Court finds that the evidence meets the defense's burden of identifying admissible evidence to demonstrate the absence of a genuine issue of material fact.

/ / /

**C.     Defendants Contreras and Ortega Have Met their Burden on Summary Judgment**

Plaintiff alleges that on August 1, 2013, Defendant Ortega was escorting him back to his building when Defendant Contreras walked up and began violently assaulting Plaintiff.  (Doc. 1, Comp., p. 7.)  Plaintiff alleges the incident was staged by Defendants Ortega and Contreras, and he sustained permanent injuries to his lower leg, right shoulder, and head.  (*Id.*.)

        **a.     Defendant Contreras' Motion**

Defendant Contreras asserts that although Plaintiff filed eight IAs from June 21, 2013, through May 23, 2014, only one mentioned Defendant Contreras -- CCI-0-13-01997.  (Doc. 33-1, p. 3.)

Plaintiff submitted CCI-0-13-01997 on September 20, 2013, contending he was being denied witnesses at a September 1, 2013 Rules Violation Report hearing (i.e., "115 hearing"), and that Officer Contreras lied in his report.  (Doc. 33-1, 3:1-17, citing Doc. 33-5, SSUF No. 12.)  Because Plaintiff alleged staff misconduct, this IA was categorized as a staff complaint.  (*Id.*, citing Doc. 33-5, SSUF No. 13.)  On October 4, 2013, this IA was rejected and Plaintiff was informed that if he wished to appeal the Rules Violation Report issue -- separate from the staff misconduct issue -- he needed to file a separate IA.  (*Id.*)

On October 8, 2013, the second level of review cancelled this IA for exceeding the time limits for submitting it, despite having the opportunity to do so.  (*Id.*, citing Doc. 33-5, SSUF No. 14 in which Plaintiff appealed another incident that occurred on August 1, 2013, but did not resubmit his IA until September 20, 2013.)  (*Id.*)  Plaintiff was informed he could submit a separate IA regarding the disciplinary hearing issue, but did not appeal the cancellation of CCI-0-13-01997 to the third level of review.  (*Id.*, citing Doc. 33-5, SSUF No. 15.)

Plaintiff did not submit any other IAs concerning Defendant Contreras during the time period of June 21, 2013, through May 23, 2014.  (Doc. 33-1, 3:24-26, citing Doc. 33-5, SSUF No. 20.)  The Court finds that the evidence submitted by Defendant Contreras meets the defense burden of informing the Court of the basis for the motion for summary judgment and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact.

//

6

**b.     Defendant Ortega's Motion**

Defendant Ortega asserts that, though Plaintiff filed eight IAs from June 21, 2013, through May 23, 2014, only one of those inmate appeals mention Defendant Ortega: CCI-0-13-01997. (Doc. 34-1, p. 2.)

Defendant's evidence shows that Plaintiff submitted CCI-0-13-01997 on September 20, 2013. (Doc. 34-1, p. 2, citing Doc. 34-2, UF No. 8.)  In this IA, Plaintiff complained that he was deprived of due process at the September 1, 2013 rules violation hearing that involved the August 1, 2013 incident because Plaintiff was prevented from calling witnesses at the hearing and Defendants Contreras and Ortega lied in the reports they submitted regarding the August 1, 2013 incident. (*Id.*, citing Doc. 34-2, UF No. 9.)  Apparently, because Plaintiff made a passing reference in his 602 form to his desire to have Defendants Contreras and Ortega prosecuted for an alleged assault, at the second level of review, it was inadvertently treated by the CDCR as alleging staff misconduct that occurred on August 1, 2013 and was categorized as a staff complaint. (*Id.*, citing Doc. 34-2, UF No. 10.)

On October 14, 2013, at the second level of review, the CDCR cancelled CCI-0-13-01997 as untimely (*id.* citing Doc. 34-2, UF No. 11) because under Title 15 section 3084.8(b)(1)-(2), an inmate is required to file an IA within thirty calendar days of the incident. Here, Plaintiff appealed an incident that occurred on August 1, 2013, but did not submit his IA until September 20, 2013. (*Id.*) Plaintiff was advised in writing that he could appeal the cancellation decision, but did not do so. (*Id.*, citing Doc. 34-2, UF Nos. 12-13.)

The Court finds that the evidence submitted by Defendant Ortega meets the defense burden of informing the Court of the basis for the motion for summary judgment and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact. Since each Defendant has met the burden on moving for summary judgment, the burden shifts to Plaintiff to establish that a genuine issue of material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

material, in support of his contention that the dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

**D.      Plaintiff's Opposition Fails to Meet His Burden on Opposing Defendants' Motions**

Plaintiff first presents a litany of incidents of staff misconduct other inmates told him about upon his arrival at CCI.  (Doc. 48, pp. 1-4.)  Plaintiff asserts that inmate appeals he filed were either sabotaged, destroyed, "torn-up," cancelled, or screened out at the first, second, or third levels of review.  (*Id.*, p. 6.)  Plaintiff argues that he:

> vigorously, viciously and promptnessly [sic] filed a 602 appeal the same night both violently [sic] assaults happened, on 6-21-13 and 8-1-13.  602s [sic] appeals had a bad habit of disappearing at Tehachapi prison, you know this and I knew this! So stop the B.S., what [sic] ever plaintiff was told to do on any appeal rejected, cancellation, etc. Plaintiff did it that same day, but since there wasn't any appeals returning back to plaintiff that whole 30 days after the 8-1-13 violent assault, if one did come back it was rejected or something always! The prison made it virtuely [sic] impossible for plaintiff to exhaust his remedies through corruptness!  All three defendants names was always on every [sic] plaintiff [sic] written included [sic] appeal [sic] complaints, because plaintiff did use other methods when the 602s was disappearing.  Other methods as, using medical forms as 602s, (as covertness), when the Plaintiff emergency 602s [sic] forms he had submitted disappear [sic] mysteriously.

(*Id.*, pp. 11-12.)  Plaintiff repeatedly asserts that the corruptness of prison staff made it virtually impossible for him to exhaust his remedies.  (*See Id.*, pp. 14-16, 19-20.)

"[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA.  If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).  However, to fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening.  In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his

8

grievance or grievances for reasons inconsistent with or unsupported by applicable regulations. *Id.*, at 823-24.  Plaintiff's opposition falls short on both accounts.

Plaintiff fails to submit evidence to establish that he filed or attempted to file grievances on the two incidents at issue in this case.  Although he submitted over one-hundred pages of exhibits, Plaintiff's opposition does not include a single declaration attesting that any of the exhibits are copies of grievances that he filed on the incidents at issue in this action.  Plaintiff also does not attest, nor makes any suggestion as to when or where he filed any such grievances to show attempted compliance with CDCR's grievance process.  In fact, though Plaintiff generally asserts that all of his grievances were screened out or otherwise rejected and attaches a number of exhibits that are in fact rejection or cancellation of various of his grievances, he fails to tender any evidence in the form of affidavits,[7] and/or admissible discovery materials to show that any of the rejections were wrongful and issued on the grievances he purports to have filed on the incidents in dispute in this action.  *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong*, 474 F.2d at 749.  Plaintiff also fails to show that he attempted to comply with CDCR's grievance process by appealing any wrongful cancellations of any grievances he filed on his claims in this action.  In short, Plaintiff's opposition is too conclusory and vague to show that any of his appeals grieving the events in this action were improperly screened out to be excused from complying with CDCR's grievance process.  *Sapp*, 623 F.3d at 823-24.

Further, any argument that might be extrapolated to suggest that the grievance process was rendered effectively unavailable because Plaintiff feared retaliation is unavailing.  Plaintiff fails to show that both a subjective and objective basis for any such fear of retaliation precipitated

---

[7] Although Plaintiff's Complaint is verified, it fails to "set[] forth specific facts admissible in evidence" on the issue of his exhaustion efforts. *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996). Rather, although Plaintiff checked the box that the process was completed, in his explanation of what occurred at each level, he writes: "Officer Jolly on 602 complaint was move [sic] to another area of the prison hole.  Officer Contreras was also move [sic] to another area of the prison.  C/O Ortega remain around my area." (Doc. 1, p. 2.)  Further, Plaintiff did not attach any exhibits to the Complaint which show his compliance with CDCR's grievance procedures.  He instead attached letters from CCI Associate Warden J. Gutierrez dated September 27, 2013, and November 18, 2013 and a November 18, 2013 letter from the Office of the Inspector General and a November 21, 2013 letter from the Investigation Services Unit.  (*Id.*, pp. 12-15, 19-20.)  However, all of these letters were generated apparently in response to correspondence received from Plaintiff.  Since none of Plaintiff's initiating correspondence was attached to the Complaint, the adequacy of their contents for exhaustion purposes and any excusable basis for Plaintiff to have attempted to circumvent the CDCR grievance policy is not shown.

9

his attempts to use other means to exhaust administrative remedies such as medical appeals and correspondence to the Warden, the Investigation Services Unit, and the Inspector General. *See McBride v. Lopez,* --- F.3d ---, 2015 WL 7434623 (9th Cir. 2015).

In sum, Plaintiff fails to tender evidence of specific facts to establish that a genuine issue of material fact exists to defeat Defendants' motions for summary judgment. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong*, 474 F.2d at 749.

## **RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

(1) the motion for summary judgment filed by Defendants Jolly and Contreras, on September 1, 2015, (Doc. 33), for Plaintiff's failure to exhaust available administrative remedies prior to filing suit be **GRANTED**;

(2) the motion for summary judgment filed by Defendant Ortega, on September 1, 2015, (Doc. 33), for Plaintiff's failure to exhaust available administrative remedies prior to filing suit be **GRANTED**; and

(3) the case be **DISMISSED without prejudice**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 1, 2016**                         /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE